# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**
MAY 25 2001
CHARLES R. FULBRUGE III
CLERK

No. 00-30834

D.C. Docket No. 96-CV-2430

AKZO-NOBEL INC; GENERAL CHEMICAL CORP; MISSISSIPPI LIME MANAGEMENT CO; MORTON INTERNATIONAL; OCI OF WYOMING; LONNY BADEAUX; JOSEPH VENDETTI; METHANE AWARENESS RESOURCE GROUP; DIESEL COALITION

        Plaintiffs - Appellees

v.

UNITED STATES OF AMERICA; TOMMY THOMPSON, Secretary of Health & Human Services; LINDA ROSENSTOCK, Director, National Institute for Occupational Safety and Health; RICHARD KLAUSNER, Director, National Cancer Institute

        Defendants - Appellants

Appeal from the United States District Court for the Western District of Louisiana, Lafayette.

Before GARWOOD, HALL,* and BARKSDALE, Circuit Judges.

## JUDGMENT

        This cause was considered on the record on appeal and was argued by counsel.

        It is ordered and adjudged that the appeal is remanded to the district court to revise its order in accordance with the opinion of this Court.

        IT IS FURTHER ORDERED that each party bear its own costs on appeal.

ISSUED AS MANDATE: JUL 17 2001

*Circuit Judge of the Ninth Circuit, sitting by designation.

OP-OA-J-1



A true copy
Test
Clerk, U S Court of Appeals, Fifth Circuit
By_____
       Deputy

New Orleans, Louisiana    JUL 17 2001

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED

MAY 25 2001

CHARLES R. FULBRUGE III
CLERK

No. 00-30834

AKZO-NOBEL INC; GENERAL CHEMICAL CORP; MISSISSIPPI LIME
MANAGEMENT CO; MORTON INTERNATIONAL; OCI OF WYOMING;
LONNY BADEAUX; JOSEPH VENDETTI; METHANE AWARENESS RESOURCE
GROUP; DIESEL COALITION

Plaintiffs-Appellees

versus

UNITED STATES OF AMERICA; TOMMY THOMPSON, SECRETARY
OF HEALTH & HUMAN SERVICES; LINDA ROSENSTOCK,
Director, National Institute for Occupational Safety and
Health; RICHARD KLAUSNER, Director, National Cancer Institute

Defendants-Appellants

Appeal from the United States District Court
for the Western District of Louisiana
(H-96-CV-2430)

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

PER CURIAM:[2]

Appellants challenge an injunctive order requiring them to submit data from a study on the health effects of diesel exhaust to a Congressional committee. The order was designed to remedy the appellants' violation of the Federal Advisory Committee Act

---

[1] Circuit Judge of the Ninth Circuit, sitting by designation.

[2] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("FACA"), 5 U.S.C. App. 2. Appellants' contend that the order is not tailored to their FACA violation and should be revised. We agree.

I. FACTS AND PROCEDURAL HISTORY

In 1995, two components of the U.S. Department of Health and Human Services ("HHS"), the National Institute for Occupational Safety and Health ("NIOSH") and the National Cancer Institute ("NCI"), began conducting a health study to determine whether exposure to diesel exhaust causes lung cancer in mine workers. The data collected includes personal and medical records, tax records, and cause of death information for thousands of mine workers. The first results from the mortality portion of the study should be available in 2003.

At first, HHS asked a panel of six scientists to periodically review the progress of the study and comment on the study's methods. Plaintiffs, a coalition of mine owners, brought a civil action challenging the use of the peer review panel under FACA. Congress enacted FACA in 1972 to regulate the increasing number of boards and committees established to advise the executive branch. A committee that meets FACA's definition of "advisory committee" is subject to several limitations regarding its establishment, composition, recordkeeping, and duration.

The district court held that the HHS peer review panel challenged by plaintiffs was an advisory committee within the meaning of FACA and enjoined further meetings of the panel. In response, HHS disbanded the peer review panel and replaced it with a pre-existing FACA advisory committee, the Board of Scientific Counselors of NIOSH ("BSC"). The BSC is a panel of 15 members knowledgeable in disciplines involving occupational safety and health. The BSC panel is selected by the Secretary of HHS. The BSC met in January 1997 to review the revised draft protocol for the diesel exhaust study. Once it gave its approval, HHS began the study in the field.

Plaintiffs amended their complaint to challenge the use of the BSC as an advisory committee. They alleged several violations of FACA. The district court rejected all of plaintiffs' claims and entered judgment in favor of the government. This Court affirmed the district court's ruling except for one issue. Under FACA, a federal agency must file the advisory committee's charter with the appropriate Congressional oversight committees. HHS had filed the BSC's charter with the Committee on Commerce in the House of Representatives. This Court held that HHS had filed BSC's charter with the wrong committee in the House; the charter should have been filed with the House Committee on Education and the Workforce ("the

Committee") (previously known as the House Labor Committee).³ The case was remanded back to the district court to determine an appropriate remedy for HHS's violation of FACA. See Cargill, Inc. v. United States, 173 F.3d 323, 342 (5th Cir. 1999).

On remand, the district court issued an injunctive order that stated in part:

> 3. Defendants shall submit to the U.S. House of Representatives Committee on Education and the Workforce all Diesel Study data requested by the Committee, as well as all draft reports, publications, and draft results or risk notification materials prepared in connection with the Diesel Study, for review and approval prior to finalization and release and/or publication and distribution of such materials.

After the district court rejected the government's motion to modify the order, the government filed this appeal.

II. DISCUSSION

HHS contends that the order is flawed in two ways: 1) the order gives the Committee the authority to disallow publication of the study; and 2) the order requires HHS to turn over confidential tax data and cause of death information to the Committee. This Court reviews the "scope and form of the

---

³ This seems to have been an understandable mistake. While the House Committee on Commerce has jurisdiction over HHS, the Committee on Education and the Workforce has jurisdiction over NIOSH, and, therefore, was the committee where the BSC charter had to be filed. See Cargill, Inc. v. United States, 173 F.3d 323, 329 (5th Cir. 1999).

4

injunction for an abuse of discretion." <u>Pebble Beach Co. v. Tour 18 I Ltd.</u>, 155 F.3d 526, 550 (5th Cir. 1998).

A.  House Committee Control Over the Study's Release

In its earlier opinion in this case, this Court refused to adopt a per se rule enjoining publication of all data acquired while an agency was in violation of FACA requirements: "[T]here occasionally may be FACA violations that are either unintentional or so *de minimis* as not to warrant a court's attention." <u>Cargill</u>, 173 F.3d at 342. "The per se rule would require a costly injunction to issue even when its deterrence benefits would be minimal." <u>Id.</u>

As we suggested in our prior opinion, an order requiring Committee approval before the study can be released is not appropriate for HHS's inadvertent mistake in filing the BSC charter with the wrong House committee: "[T]he district court need not automatically bar the use of all of the BSC's work product-i.e., grant a 'use injunction.'" <u>Id.</u>  Congress has given HHS the authority to publish the results of its investigations into public health dangers.  <u>See</u> 29 U.S.C. § 657(g)(1).  The district court order is tantamount to a use injunction because it authorizes the Committee to prevent the study's publication. "[W]e join the District of Columbia Circuit in concluding that 'a use injunction should be the remedy of last resort.'" <u>Cargill</u>,

173 F.3d at 342 (quoting <u>Natural Resources Defense Council v. Pena</u>, 147 F.3d 1012, 1025 (D.C. Cir. 1998)).

In our earlier opinion, we endorsed the approach taken in <u>California Forestry Ass'n v. United States Forest Serv.</u>, 102 F.3d 609, 614 (D.C. Cir. 1996). The <u>California Forestry</u> court noted that "[t]he need for injunctive relief may be reduced where, as here, there has been at least some attempt to ensure public accountability" and where an injunction would not serve FACA's goal of reducing wasteful expenditures. <u>Id.</u>; <u>see also</u> <u>Natural Resources</u>, 147 F.3d at 1026 ("Substantial efforts to include members of the interested public in at least some committee meetings . . . counsel against a use injunction."). We instructed the district court "to fashion an injunctive remedy that will encourage compliance with FACA's strictures while remaining sensitive to its principal purposes of public accountability and avoidance of wasteful expenditures." <u>Cargill</u>, 173 F.3d at 342.

The district court order does not serve the goals of public accountability and reduction of economic waste. HHS did not hide from Congressional oversight. It tried to make itself accountable to the public. It unknowingly filed BSC's charter with the wrong House committee and filed it with the correct Senate committee. Plaintiffs and other interested parties had actual notice that the BSC was reviewing the study protocol and

were informed of and invited to every meeting of the BSC panel. See Cargill, 173 F.3d at 332. As the order stands, the Committee can decide to never release or publish the study results. This would result in a waste of the $2.5 million already invested in this study.

Plaintiffs contend that a remedial order that only requires HHS to file its charter with the appropriate committee at this late date gives it a "free pass" for its FACA violation. But the district court did order some injunctive relief that the government complied with immediately. It ordered HHS to file the BSC charter with the appropriate committee. This relief ensures that HHS does not proceed with its study without appropriate Congressional oversight. Injunctive relief is meant to serve a remedial purpose, not a punitive one. See Natural Resources, 147 F.3d at 1022. It is unclear how authorizing the Committee to prevent publication of the study would remedy HHS's mistake in filing its charter with the wrong House committee. There is no evidence suggesting that the data collected for the HHS study would have differed if the BSC charter had been filed with the appropriate committee, and this Court rejected every other FACA violation alleged by the plaintiffs.

If there is no indication that the study protocol would have differed under the supervision of the Committee on Education, there is no indication that HHS is likely to commit similar

violations in the future, and BSC's charter has been filed with the correct committee, then there is little reason for further injunctive relief. We are concerned, however, that the Committee should have sufficient time to examine the misfiled study data. Accordingly, we instruct the district court to revise its order so that HHS will be barred from publicly releasing any of the information it sends to the Committee until 90 days after its submission.

B.  Confidential Records

The district court's order requires HHS to turn over "all draft reports, publications, and draft results" prepared in connection with the study and "all Diesel Study data requested by the Committee." HHS contends that the order would require it to turn over two categories of data that the agency is barred from disclosing by statute: 1) federal tax returns; and 2) cause-of-death information obtained from the states.

1.  Tax Information

The only tax information received by HHS consists of mailing addresses of diesel study subjects culled from IRS files. The Internal Revenue Code provides for disclosure of tax information to Congressional committees. The Secretary of the Treasury must furnish tax return information upon receiving a written request by the chair of any Congressional committee that has been

8

"specially authorized" to inspect returns by a resolution of the Senate or House. 26 U.S.C. § 6103(f)(3). No resolution has been passed authorizing the Committee on Education to review the tax returns at issue.

Congress was sensitive to the need to preserve the confidentiality of tax information when it crafted and revised § 6103. See United States v. De Leon Guerrero, 1992 WL 321010, *18 (D. N. Mar. I., July 24, 1992) ("[T]he legislative history of 26 U.S.C.A. § 6103 . . . [is] aimed at protecting taxpayer privacy with respect to the public, and preventing disclosure to society at large."). Therefore, until the House of Representatives has passed a resolution authorizing the Committee to review the individual tax returns, HHS does not need to release this information to the Committee. Any "agency *reformulation* of the return information into a statistical study or some other composite product," however, must be turned over to the Committee. Church of Scientology of California v. IRS, 792 F.2d 153, 160 (D.C. Cir. 1986) (en banc) (emphasis in original), aff'd, 484 U.S. 9 (1987).

B.   Cause-of-Death Information

HHS also objects to the mandatory release of cause-of-death statistics to the Committee. 42 U.S.C. § 242m(d) provides that information collected as part of HHS's research on environmental hazards may not be used "for any purpose other than the purpose

9

for which it was supplied" unless the establishment or person supplying the information has consented to its use for such other purpose.

The cause-of-death data comes from contracts between the National Center for Health Statistics and individual states. The contracts submitted by HHS do not show an intent to restrict the access of Congressional committees to the data. The data was released for its use in a study of the effects of diesel exhaust. Giving the Committee the ability to oversee the study by examining such data is part of this purpose.

The contracts do show an intent to avoid the outside release of information identifying specific individuals and their causes of death, however. Moreover, under § 242m(d), "such information may not be published or released in other form if the particular establishment or person supplying the information or described in it is identifiable unless such establishment or person has consented (as determined under regulations of the Secretary) to its publication or release in other form." 42 U.S.C. § 242m(d). Therefore, the death statistics should be released to the Committee in aggregate form, but not in a way that would allow for the identification of individual decedents.

III. CONCLUSION

10

We remand this case to the district court to revise its order. The order cannot require Committee approval before publication of the study. Instead, HHS must wait until 90 days after the Committee has received the data before it can publicly release the data. The order should only require HHS to provide the Committee with individual tax data after a resolution has been passed by the House of Representatives authorizing such individual review. Any data on cause of death must be submitted to the Committee but not in a way that would allow for the identification of individual decedents.

# *United States Court of Appeals*

FIFTH CIRCUIT
OFFICE OF THE CLERK

**CHARLES R. FULBRUGE III**
**CLERK**

**TEL. 504-589-6514**
**600 CAMP STREET**
**NEW ORLEANS, LA 70130**

July 17, 2001

Mr Robert H Shemwell, Clerk
Western District of Louisiana, Lafayette
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101

      No. 00-30834 Methane Awareness v. USA
      USDC No. 96-CV-2430

Enclosed, for the district court only, is a certified copy of the judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's opinion.

Record/original papers/exhibits are returned:

( 10 ) Volumes     (   ) Envelopes     ( 1 ) Box
                                                  (SENT UNDER SEPERATE SEAL)

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _____
John Alwert, Deputy Clerk
504-589-6514 ITCM # 213

cc: (letter only)
    Honorable Richard T Haik Sr
    Mr Joseph L Lemoine Jr
    Mr Henry Chajet
    Mr Robert Mark Loeb

MDT-1