```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF LOUISIANA
                     LAFAYETTE-OPELOUSAS DIVISION


AKZO-NOBEL, INC., ET AL,        *    Docket No. 96-2430
                                *
          Plaintiffs,           *
                                *
VS                              *    June 17, 2010
                                *
UNITED STATES OF AMERICA,       *
ET AL                           *
          Defendants.           *    Lafayette, Louisiana
*****************************************************************


         REPORTER'S OFFICIAL TRANSCRIPT OF THE MOTION HEARING
              BEFORE THE HONORABLE RICHARD T. HAIK
                  UNITED STATES DISTRICT JUDGE.
```

**APPEARANCES:**

For the Plaintiffs:            Jeffrey Wertkin
                               Henry Chajet
                               Joseph Lemoine


For the Defendant:             David M. Glass
                               Katherine Vincent




**REPORTED BY:**   Mary Thompson, RMR, FCRR
                   800 Lafayette Street, Ste. 3105
                   Lafayette, Louisiana  70501
                   (337)593-5222

```
1                    P R O C E E D I N G S
2              THE COURT:  Let's start with Methane Awareness.
3    The first is a motion to reopen and next is a motion for
4    contempt.
5              Who filed the motion to reopen?
6              MR. LEMOINE:  I did, Your Honor.
7              THE COURT:  Granted.  Have a seat.
8              Who filed the motion for contempt?
9              MR. LEMOINE:  (Indicating.)
10             THE COURT:  Now you can stand.
11             MR. LEMOINE:  I did that, too, Your Honor.  And do
12   you want appearances or --
13             THE COURT:  Yeah, let's do the appearances.
14             MR. LEMOINE:  All right.  Joe Lemoine.  And I would
15   like to introduce the Court to Mr. Henry Chajet and
16   Mr. Jeffrey Werkin, co-counsel representing the plaintiffs
17   also, and this is Mr. Lonny Badeaux.
18             THE COURT:  Is he co-counsel also?
19             MR. LEMOINE:  No, sir.  He is representing the
20   plaintiffs -- well, he is a plaintiff, actually, Your Honor.
21             And with the Court's permission I would like for
22   Mr. Henry Chajet to make plaintiffs' argument.
23             THE COURT:  All right.  I've heard Mr. Badeaux
24   argue a lot of times.  I thought you would have Mr. Badeaux
25   argue.
```

```
 1              MR. LEMOINE:  He'd do a good job.
 2              THE COURT:  Probably better than the lawyers in
 3    this case.
 4              MR. LEMOINE:  I'm not going to argue that.
 5              MR. CHAJET:  Good morning, Your Honor.
 6              THE COURT:  Morning.
 7              MR. CHAJET:  Thank you for --
 8              THE COURT:  Do y'all have any objection to opening
 9    this matter because I'm going to open it?
10              MR. GLASS:  No, Your Honor.
11              THE COURT:  Okay.  Good.
12              MR. CHAJET:  Thank you, Your Honor, for hearing
13    this matter this morning.
14              The facts in this case are not in dispute.  The
15    case goes back to --
16              THE COURT:  I'm very familiar with this case.  This
17    isn't your first time here -- it may be your first time here.
18              MR. CHAJET:  No, I was here, too.  In fact, we were
19    in the old courthouse.
20              THE COURT:  That's right.  It's been so long.
21              MR. CHAJET:  Last time we were here, you had just
22    moved in here and you were working on getting furniture.
23    It's been a long time.
24              And the case we thought was resolved when you
25    issued an order providing a remedy as advised by the Circuit
```

```
 1    Court of Appeals.
 2            THE COURT:  Let me hear from the other side.  I
 3    understand your argument.  I've read your memo.  The bottom
 4    line is you want me to hold them in contempt because you said
 5    they didn't comply with the order.
 6            MR. CHAJET:  We want them to follow the order,
 7    Your Honor.
 8            THE COURT:  Okay.
 9            MR. CHAJET:  Thank you.
10            THE COURT:  You're welcome.
11            MR. GLASS:  Good morning, Your Honor.  I'm David
12    Glass from the Civil Division of the Justice Department in
13    Washington.  And with me is Katy Vincent from the U.S.
14    Attorney's Office.
15            THE COURT:  I know Ms. Vincent.
16            MR. GLASS:  I'm sure you know her.  And also
17    DeKeely Hartsfield from the National Institute of
18    Occupational Safety & Health in Atlanta.
19            THE COURT:  Welcome to Louisiana where the oil is
20    underground and now also in the Gulf of Mexico.
21            MR. GLASS:  In the water.
22            Your Honor, I am a newcomer to this case, but as a
23    newcomer let me tell you what my perception is.  My
24    perception is that plaintiffs have never liked the study that
25    NIOSH and NCI have been working on all these years and
```

1    they've been trying to put the kibosh on it from the
2    beginning.  And they don't know what the study is going to
3    say, but they know they don't like it.  And now the study is
4    almost over and they're going to take one more shot at
5    stifling it.
6         And what they want is they want to have the chance
7    to review the papers that set forth the results of the study
8    and to comment on them before anybody else gets that right.
9         THE COURT:  Well, I told them they had that right
10   to do that.  You weren't here.
11        MR. GLASS:  I wasn't here, but we don't view
12   anything that happened in this case or in the Court's order
13   as giving them that exclusive right.
14        THE COURT:  Okay.
15        MR. GLASS:  What happened --
16        THE COURT:  Well, let me make it clear.  Okay?
17        I required y'all to provide them with a copy of all
18   the documents submitted to the committee in compliance with
19   this order.  Okay?  What I didn't do, unfortunately, was
20   watch the detail on some of this.  I don't just blame myself
21   for that -- although I do, but, you know, nobody else picked
22   it up either, that we should have had something extremely
23   detailed so that everybody can be on the same page.
24        MR. GLASS:  Well --
25        THE COURT:  So I think they're right although I

1  don't think that you're in contempt.
2       MR. GLASS: Well, let me see if I can explain just
3  a little bit.
4       The Fifth Circuit said that these plaintiffs had a
5  compelling interest in making sure that the study was done
6  properly and came out right, and we don't disagree that they
7  have a compelling interest, but we --
8       THE COURT: I hope you don't because the
9  Fifth Circuit tells me what to do.
10      MR. GLASS: Sure. Exactly. But the point is
11 they're not the only folks that have that compelling
12 interest. The miners --
13      THE COURT: But they're the only folks that are
14 here in court with us.
15      MR. GLASS: They are the only ones who are here,
16 but the miners certainly have that same interest and so do
17 the mine owners, and these folks don't represent all the mine
18 owners. So we made a proposition to these folks --
19      THE COURT: No, but they represent the mine workers
20 who are down there inhaling the diesel fumes, and that's what
21 this is all about.
22      MR. GLASS: But the unions represent them, too.
23      So let me tell you the proposition that we made to
24 these folks which was when the 90-day review period for
25 Congress expired -- and it expired on June 1st -- we proposed

```
 1   to them we'll give you the final draft of these papers, we'll
 2   give them to the miners, we'll give them to the mine owners,
 3   and we asked them if they objected to that because we didn't
 4   want to do it if they objected to it because they would have
 5   filed another contempt motion.  And they never gave us the go
 6   ahead to do that.  We were perfectly willing to do that and
 7   they didn't let us go ahead with it.
 8            We viewed the 90 days as a 90-day review period for
 9   Congress because that's what the Fifth Circuit said.  And
10   after all, that provision of the order went into the order in
11   the second time -- the second iteration of the order after
12   the provision was in there telling us to give the stuff to
13   plaintiffs.
14            We have no objection to giving it to plaintiffs.
15   It's giving it to plaintiffs exclusively.  That is the
16   problem.
17            THE COURT:  It's giving it to plaintiffs when.
18            MR. GLASS:  We'll give it to the plaintiffs --
19            THE COURT:  That's the problem.
20            MR. GLASS:  We'll give it to the plaintiffs at the
21   end of the 90-day period for the congressional review.  We'll
22   give it to them, we'll give it to the union, we'll give it to
23   the mine owners.
24            THE COURT:  Does that give them time to do what
25   they have to do?
```

```
 1            MR. GLASS:  I don't know what they have to do, but
 2   it's not clear to us why they should have a right to comment
 3   on this above and beyond --
 4            THE COURT:  Because the Court said they did.  And
 5   so did the Fifth Circuit.  It wasn't just me, it was them,
 6   too.
 7            MR. GLASS:  But the Fifth Circuit never said they
 8   had the exclusive right to comment and to review --
 9            THE COURT:  Nobody said they had the exclusive
10   right.
11            MR. GLASS:  Well, okay.  But if we give the papers
12   to them before we give them to everybody else, then that
13   gives them an exclusive right.
14            THE COURT:  Well, then publish it.  What are you
15   trying to hide?
16            MR. GLASS:  That's what we're planning to do.
17            THE COURT:  No, no, no.  Publish what you're doing.
18            MR. GLASS:  That's exactly what we want to do.  We
19   have an academic journal lined up, a part of the Oxford
20   University Press, to publish this.  This is what we want to
21   do.  We want to get this thing out in the open to everybody
22   so that everybody can take shots at it.
23            THE COURT:  Okay. Let's do this.  How soon can you
24   get that report to the plaintiffs?
25            MR. GLASS:  We can get it as soon as I get back to
```

```
 1  Washington.
 2          THE COURT:  Okay.  So 48 hours?
 3          MR. GLASS:  Sure.  Sure.
 4          THE COURT:  Does that make y'all happy or unhappy?
 5          I'm not going to hold them in contempt because
 6  there is some language in here that I can see where they're
 7  coming from.  But I want to give you what you want.
 8          MR. CHAJET:  Your Honor, we would happily accept
 9  delivery within 48 hours.
10          We would like the 90 days to review it before
11  they -- part of the rationale in your decision and in the
12  Fifth Circuit's decision was if there are inaccuracies, if
13  there are biases that we could point out, we should bring
14  those to the attention of HHS and the congressional
15  committee, and we would like that opportunity.  The 90 days
16  is not going to do anything to harm them, and it seems like
17  the only remedy that we have that is real is to have a look
18  at it.
19          THE COURT:  I think you're right.
20          MR. GLASS:  Your Honor, why should they have this
21  exclusive right beyond --
22          THE COURT:  It's not exclusive. You're making it
23  exclusive.  You provide it to them so they can review it, and
24  they can go ahead -- maybe they have some good points.  I
25  think everybody -- don't y'all want to protect the people
```

1  working in those mines?
2         MR. GLASS: That's why we're doing the study.
3         THE COURT: And so do they. It's better to have
4  two or three or four or five people looking at all this stuff
5  and making some decisions. What is your objection to having
6  them look at it?
7         MR. GLASS: The objection is giving them the
8  exclusive right. If we can publish it -- if we can publish
9  it and get it out to the public as soon as we possibly can,
10 that's what we want to do.
11        THE COURT: Who is preventing you from publishing
12 it and getting it out to the public?
13        MR. GLASS: Well, that's what this motion is about.
14        THE COURT: Well, wait, listen to me. They want it
15 before the committee rules on it. They want it before it is
16 provided to the committee.
17        Have y'all provided it to the committee?
18        MR. GLASS: We provided it to the committee.
19        THE COURT: So they want a right to be able to
20 address the committee, and they haven't had the opportunity
21 to see it yet. Correct?
22        MR. GLASS: That's correct.
23        THE COURT: All right. If you want to do all of
24 this thing in the sunlight and the sunshine of everybody
25 seeing and knowing, then give it to them, publish it, do

1  whatever you want, and then 90 days later have the
2  committee -- or ask the committee to review it.  I mean, I
3  don't know the procedure for all of this stuff.
4        MR. GLASS:  What we --
5        THE COURT:  It seems like we're just playing games
6  here.
7        MR. GLASS:  What happens is that this is a
8  scientific study and what you're supposed to do with
9  scientific studies -- the Office of Management and Budget has
10 ordered us to do this -- you send it out for peer review.
11       THE COURT:  I understand.
12       MR. GLASS:  What you do is you send it to an
13 academic journal and they take care of the peer review.
14       After the peer review is done, then we give it to
15 Congress.  That's the final draft of the study.  We figure
16 that Congress doesn't want to look at a preliminary draft,
17 they can look at the final draft.  That's what we have given
18 them.
19       THE COURT:  What you have, though, are miners down
20 inside the mine who may be able to read -- I know Mr. Badeaux
21 can read.  He is a pretty smart guy.  Okay?  These people
22 know -- they -- they have a stake more than the stake that
23 you have because they're down in the trenches so to speak.
24       MR. GLASS:  Sure.
25       THE COURT:  Not in the trenches, but down in the

```
 1   mine.  This is deeper than a trench.
 2           MR. GLASS:  Exactly.
 3           THE COURT:  People have died down there on
 4   occasion.
 5           MR. GLASS:  That's exactly why we want to give this
 6   to everybody.
 7           THE COURT:  Okay.  Then give it to them right now,
 8   and I'm going to order you can't publish it or do anything
 9   else for 90 days.
10           Is that what you want?
11           MR. CHAJET:  Yes, Your Honor.
12           THE COURT:  So ordered.  Provide me with an order
13   and do that.
14           And then I'm going to close this thing again after
15   that so we don't keep doing it.
16           MR. GLASS:  Thank you.
17           THE COURT:  If what you want to do is let them look
18   at it, then let them look at it.  Give them an opportunity to
19   evaluate it.
20           I don't know what you're afraid of.  Why are you
21   afraid of them looking at it and making suggestions?
22           MR. GLASS:  We're not afraid of anybody.  We want
23   everybody to have an equal chance.
24           THE COURT:  Okay.  Then everybody will have an
25   equal chance at the proper time.
```

```
 1              They're the ones asking for it now.  If somebody
 2    else were asking for it now, I would give it to them, too.  I
 3    would give it to anybody that wants to look at it so they
 4    could make recommendations for the safety of the miners.
 5    That's what this is all about.  I don't know why y'all are
 6    fighting that.
 7              MR. GLASS:  That's completely what it's all about.
 8    That's why we want to get this thing out in the public as
 9    quickly as we can to everybody.
10              THE COURT:  Okay.  Well, you heard my order.
11              Prepare an order.  I'll sign it.
12              If you want to appeal it, take it up.  Okay?
13              MR. GLASS:  Thank you.
14              MR. CHAJET:  Thank you.
15              MR. LEMOINE:  Thank you, Your Honor.  Have a good
16    day.
17              THE COURT:  I'm trying to get some sunshine down
18    way below under the ground there.
19              MR. GLASS:  Understood.
20              MR. LEMOINE:  A little bit above, too.
21              THE COURT:  And if you can get together on an order
22    together that y'all read and submit that is reasonable to
23    both sides, let me know.  If not, each side provide me with
24    an order and I'll sign the one that is right.
25              MR. GLASS:  Thank you.
```

```
 1          MR. LEMOINE:  Thank you.
 2          MR. CHAJET:  Thank you, Your Honor.
 3                        (Proceedings adjourned.)
 4
 5                        *  *  *  *
 6                        **CERTIFICATE**
 7
 8     I hereby certify this 18th day of June, 2010, that the
 9  foregoing is, to the best of my ability and understanding, a
10  true and correct transcript of the proceedings in the
11  above-entitled matter.
12
13                                   S/Mary V. Thompson
14  _____
                                     Official Court Reporter
```